## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

ERIK SEGELSTROM, *et al.*,

      Plaintiffs,

      v.

CITIBANK, N.A., *et al*,

      Defendants.

Civil Action No. 14-1071 (CKK)

## MEMORANDUM OPINION
(November 21, 2014)

Plaintiffs Erik Segelstrom and Cathie Hamer, who are proceeding *pro se*, filed this lawsuit against five "Doe" defendants and seven named defendants—Citibank N.A. ("Citibank"), Nationstar Mortgage LLC ("Nationstar"), Sheriff Thomas Allman, in his personal and private capacity, and the Mendicino County Sheriff's Department (collectively the "Law Enforcement Defendants"), and TFLG A Law Corporation, Eric G. Fernandez, and Viana G. Barbu[1] (collectively the "Law Firm Defendants"). Plaintiffs challenge the foreclosure of

---

[1] Plaintiffs have not filed any proof of service on Defendant Viana G. Barbu, who was an attorney at TFLG A Law Corporation ("TFLG"). *See* Law Firm Defendants' Notice, ECF No. [24], at 1. Ms. Barbu has never entered an appearance in this case. It was initially not clear from the Motion to Dismiss submitted by counsel for TFLG and Eric G. Fernandez whether their counsel also represented Ms. Barbu. Accordingly, the Court ordered counsel for TFLG and Mr. Fernandez to clarify whether she was representing Ms. Barbu. *See* Minute Order (Sept. 2, 2014). On September 3, 2014, counsel for TFLG and Mr. Fernandez entered a Notice on the public docket indicating that she did not represent Ms. Barbu, that Ms. Barbu is no longer employed with TFLG, and that "[u]pon information and belief, . . . Defendant Barbu has not been served in this cause." Law Firm Defendants Notice at 1. Counsel further indicated that a process server had attempted to serve Mr. Fernandez with a summons and complaint for Ms. Barbu, but Mr. Fernandez informed the process server that Ms. Barbu no longer worked at the firm and that he was not authorized to accept service on her behalf. *Id.* The deadline for serving Defendants in this case was October 23, 2014. When Plaintiffs properly filed their Amended Complaint on October 14, 2014, Plaintiffs did not include Ms. Barbu in the case caption and the Complaint no

Plaintiffs' California property and the related unlawful detainer proceeding.  Plaintiffs also allege intentional infliction of emotion distress and numerous claims under the False Claims Act, 31 U.S.C. § 3729 *et seq.*  Presently before the Court are motions by several Defendants for dismissal of this lawsuit as well as Plaintiffs' Motion for Preliminary Injunction and Temporary Restraining Order and Motion to Amend the Complaint.  Upon consideration of the pleadings,[2] the relevant legal authorities, and the record as a whole, the Court issues the following rulings.  The Court GRANTS Plaintiffs' Motion to Amend the Complaint.  The Court further GRANTS the motions to dismiss of Defendants Citibank, Nationstar, the Law Enforcement Defendants, and the Law Firm Defendants.  In light of the decision on Defendants' motions to dismiss, Plaintiffs' Motion for Preliminary Injunction and Temporary Restraining Order is DENIED AS

---

longer included any mention of her. *See* Am. Compl., ECF No. [48-1].  Accordingly, the Court will treat Defendant Viana G. Barbu as voluntarily dismissed from this case.

[2] Plaintiffs' Motion to Amend/Correct Complaint, ECF No. [48]; Nationstar Mortgage LLC's Motion to Dismiss ("Nationstar's MTD"), ECF No. [7]; TFLG A Law Corporation & Eric G. Fernandez's Motion to Dismiss ("Law Firm Defendants' MTD"), ECF No. [8]; Thomas Allman & Mendocino County Sheriff's Department's Motion to Dismiss ("Law Enforcement Defendants' MTD"), ECF No. [20]; Citibank, N.A.'s Motion to Dismiss ("Citibank's MTD"), ECF No. [39]; Plaintiffs' Opposition to Nationstar's MTD ("Pl.s' Nationstar Opp'n"), ECF No. [32]; Plaintiffs' Opposition to Law Firm Defendants' MTD ("Pl.s' Law Firm Opp'n"), ECF No. [33]; Plaintiffs' Opposition to Law Enforcement Defendants' Motion to Dismiss ("Pl.s' Law Enforcement Opp'n"), ECF No. [46]; Plaintiffs' Opposition to Citibank's Motion to Dismiss ("Pl.s' Citibank Opp'n"), ECF No. [50]; Nationstar's Reply to Plaintiffs' Opposition to Motion to Dismiss ("Nationstar's Reply"), ECF No. [44]; Law Firm Defendants' Reply to Plaintiffs' Opposition to Motion to Dismiss ("Law Firm Defendants' Reply"), ECF No. [45]; Law Enforcement Defendants' Reply to Plaintiffs' Opposition to Motion to Dismiss ("Law Enforcement Defendants' Reply"), ECF No. [42]; Citibank's Reply to Plaintiff's Opposition to Motion to Dismiss ("Citibank's Reply"), ECF No. [53]; Plaintiffs' Amended Motion for Preliminary Injunction and Motion for Temporary Restraining Order ("Pl.s' PI"), ECF No. [30]; Law Firm Defendants' Opposition to Plaintiffs' PI, ECF No. [16]; Nationstar's Opposition to Plaintiffs' PI, ECF No. [17]; Law Enforcement Defendants' Opposition to Plaintiffs' PI, ECF No. [27]; Plaintiffs' Reply to Nationstar's Opposition to Plaintiffs' PI, ECF No. [35]; Plaintiffs' Reply to the Law Firm Defendants' Opposition to Plaintiffs' PI, ECF No. [36]; Plaintiffs' Reply to Law Enforcement Defendants' Opposition to Plaintiffs' PI, ECF No. [37].

MOOT.   The Court shall not address Plaintiffs' Motion for Preliminary Injunction in this Memorandum Opinion, but only Defendants' Motions to Dismiss.

## I.      BACKGROUND

Before proceeding to the facts of this case, the Court shall address Plaintiffs' Motion to Amend the Complaint.  Plaintiffs properly filed a Motion to Amend the Complaint on October 14, 2014.[3]  Plaintiffs' proposed Amended Complaint contained few substantive changes.  Rather, the primary change was a three-page summary of Plaintiffs' claims added to the beginning of the Complaint in an attempt to clarify the exact nature of Plaintiffs' claims per the Court's instructions in its August 21, 2014, Order.  *See* Order (Aug. 21, 2014), ECF No. [15].  The Court ordered Defendants to file a Notice with the Court indicating any objections to Plaintiffs' Amended Complaint and indicating whether their motions to dismiss—which had all been filed prior to Plaintiffs properly filing their Motion to Amend THE Complaint—were still applicable to the Amended Complaint in the event the Court were to grant Plaintiffs leave to amend their Complaint.  *See* Order (Oct. 2, 2014), ECF No. [43].  Defendants indicate that they oppose Plaintiffs' Amended Complaint because it merely restates the same facts as the original Complaint in different terms, but affirm that all of their arguments in their respective motions to dismiss remain applicable.  In light of the attempt at clarifying Plaintiffs' claims included at the beginning of Plaintiffs' Amended Complaint, the non-substantive nature of the changes in Plaintiffs' Amended Complaint, and the fact that Defendants' motions to dismiss apply with

---

[3] Plaintiffs initially attempted to file an Amended Complaint on September 3, 2014, however, they only filed the Amended Complaint and did not include a motion seeking the Court's leave to amend their Complaint.  Accordingly, the Court denied Plaintiffs leave to file their Amended Complaint on the public docket.  On September 10, 2014, Plaintiffs filed a Motion to Amend Complaint, but did not attach their proposed amended complaint to the Motion.  Plaintiffs finally properly filed a Motion to Amend Complaint with an attached proposed amended complaint on October 14, 2014.

equal force to the Amended Complaint, the Court shall GRANT Plaintiffs leave to file their Amended Complaint.

### A.  Factual Background

For the purposes of these motions to dismiss, the Court accepts as true the well-pleaded allegations in Plaintiffs' Amended Complaint. The Court has been able to discern the following facts from Plaintiffs' lengthy and often rambling Amended Complaint.

Plaintiffs' claims arise out of a July 15, 2004, mortgage transaction with Lehman Brothers Bank FSB, evidenced by a promissory note ("the Note") in the amount of $520,000 ("the Loan"), and secured by a Deed of Trust placing a lien on certain real property located at 29850 Ten Mile Road, Point Arena, California 95468 ("the Property").  Am. Compl. ¶ 14.  The mortgage servicer for Plaintiffs' Loan at the time the Loan was originally made was Aurora Loan Services.  *Id.* ¶ 13.  The Mortgage and Note were securitized and sold to a REMIC known as Structured Asset Securities Corporation Mortgage Loan Trust 2005-2XS.  *Id.* ¶ 1.  Plaintiffs allege that Citibank, NA is the Securities Administrator for the REMIC.  *Id.* ¶¶ 1, 4.  In June of 2012, Lehman Brothers sold the assets of Aurora Bank, FSB and Aurora Loan Servicing to Nationstar Mortgage LLC. *Id.* ¶ 4.  The Mortgage Electronic Registration System ("MERS") assigned Plaintiffs' note and Deed of Trust to Nationstar on December 11, 2012. *Id.* ¶¶ 11, 12, Ex. B (Assignment of Deed of Trust).  Nationstar began servicing Plaintiffs' Loan.  *Id.* ¶ 4.

Plaintiffs defaulted on their obligation to repay the Loan in or around October 2013.  *See Id.* at Ex. E (Notice of Default).  Plaintiffs do not contest that they defaulted on their Loan and owe money.  Plaintiffs received a Notice of Default from Nationstar on or around October 17, 2013.  *Id.*  Plaintiffs allege that Citibank is using Nationstar as their proxy and agent with respect to the foreclosure and eviction. *Id*. ¶ 62.  Plaintiffs' property was sold to Nationstar in a non-

judicial foreclosure sale on or around February 14, 2014.[4]  *Id.* ¶ 39, Ex. F (Notice of Trustee's Sale); Nationstar MTD at 2.

On March 28, 2014, Nationstar filed an unlawful detainer proceeding against Plaintiffs in California state court.  Am. Compl. ¶ 94, Ex. F* (Unlawful Detainer Compl.).[5]  TFLG A Law Corporation represented Nationstar in the unlawful detainer proceeding.  *Id.* ¶ 58, Ex. F* (Unlawful Detainer Compl.).  Judgment was entered against Plaintiffs Segelstrom and Hamer on August 8, 2014, and a writ of possession was issued on August 29, 2014.  *See* Notice of Related Case, ECF No. [22], Ex. B (Unlawful Detainer Judgment).  Plaintiffs allege that Mendocino County Sheriff Thomas Allman and the Mendocino County Sheriff's Department are acting as agents for Nationstar in Nationstar's efforts to foreclose on and evict Plaintiffs from their home. Am. Compl. ¶ 4.  The Mendocino County Sheriff's Department has indicated that they "intend to await a ruling from this Court on the TRO motion before enforcing the Writ [of possession]." Notice of Related Case, at 2.

### B.  Procedural History

Plaintiffs filed suit in this Court on June 25, 2014, against Citibank, Nationstar, and the Law Firm and Law Enforcement Defendants challenging the foreclosure and eviction proceedings with regards to their property and bringing several claims under the False Claims

---

[4] The parties appear to dispute whether the public auction discussed in the Notice of Trustee's Sale actually took place.  Plaintiffs contend that the public auction was scheduled for February 14, 2014, but was cancelled and "no actual Trustee Sale's/public auction ever occurred."  Am. Compl. ¶¶ 38-39. As discussed *infra*, whether or not Plaintiffs' property was foreclosed on by an actual public auction is immaterial to Plaintiffs' wrongful foreclosure claim as Plaintiffs do not dispute that they were in default on their loan and thus subject to foreclosure. *See* Part b.i.

[5] The exhibits attached to Plaintiffs' Amended Complaint appear to contain two Exhibit "F"s.  The Court shall reference the second Exhibit F as Exhibit "F*" in order to avoid confusion.

Act.  Defendant Nationstar and the Law Firm Defendants filed motions to dismiss on August 4, 2014.  On August 8, 2014, Plaintiff Segelstrom filed a voluntary petition for bankruptcy in the United States Bankruptcy Court for the Northern District of California.  *See* Suggestion of Bankruptcy, ECF No. [11].   Shortly thereafter, Plaintiffs filed a Motion for Preliminary Injunction or Temporary Restraining Order in this Court.  In light of Plaintiff Segelstrom's pending voluntary petition for bankruptcy, the Court stayed this case as to Plaintiff Segelstrom until resolution of Plaintiff Segelstrom's bankruptcy matter, or until Plaintiff Segelstrom withdrew his bankruptcy petition.  *See* Order (Aug. 21, 2014), ECF No. [14].  However, as Plaintiff Hamer was not included in the petition for bankruptcy, the Court set a briefing scheduling for Plaintiff Hamer to respond to Defendants' motions to dismiss and to further brief Plaintiffs' Motion for Preliminary Injunction and Temporary Restraining Order.

The Law Enforcement Defendants filed a Motion to Dismiss on August 28, 2014. On September 3, 2014, the Court lifted the stay in this matter as to Plaintiff Segelstrom upon learning that Plaintiff Segelstrom's bankruptcy petition in the U.S. Bankruptcy Court of the Northern District of California had recently been dismissed.  *See* Order (Sept. 3, 2014), ECF No. [23].   The Court set a briefing schedule for Plaintiff Segelstrom to respond to Defendants' motions to dismiss and to further brief Plaintiffs' Motion for Preliminary Injunction and Temporary Restraining Order.  The Court put Plaintiffs on notice "that the resolution of their Motion for Preliminary Injunction and Motion for Temporary Restraining Order [would] be delayed because of the stay that the Court was required to impose."  *Id.* at 3.  The Court found that "[a]s only one property is at issue in which both Plaintiffs have an interest, . . . it [would] have a more complete record on which to rule if it wait[ed] for both Plaintiffs to complete their

briefing of their Motion and resolve[d] the Plaintiffs' Motion for Preliminary Injunction and Motion for Temporary Restraining Order in one order addressing both parties' arguments. *Id.*

Defendant Citibank filed a Motion to Dismiss on September 29, 2014. On October 14, 2014, Plaintiffs properly filed a Motion for Leave to file an Amended Complaint. As discussed above, while certain Defendants opposed Plaintiffs' Motion to Amend Complaint, all Defendants indicated that the motions to dismiss they filed prior to Plaintiffs filing their Amended Complaint still applied fully to Plaintiffs' Amended Complaint.

As all motions have now been fully briefed, this matter is ripe for the Court's review. In short, the Law Firm Defendants seek to dismiss Plaintiffs' Amended Complaint arguing that this Court lacks personal jurisdiction over them and that Plaintiffs have not stated any claim against them. Similarly, the Law Enforcement Defendants seek to dismiss Plaintiffs' Amended Complaint on the basis of personal jurisdiction and failure to state a claim. The Law Enforcement Defendants also argue that this Court lacks subject matter jurisdiction over Plaintiffs' claims pursuant to the *Rooker-Feldman* doctrine and, alternatively, that venue is improper in this Court. The *Rooker-Feldman* doctrine does not bar this Court's subject matter jurisdiction over Plaintiffs' claims.[6] The Court will only address the Law Firm and Law

---

[6] The Law Enforcement Defendants contend that the *Rooker-Feldman* doctrine should bar the Court's subject matter jurisdiction over this case because it bars jurisdiction over cases involving collateral attacks on state court foreclosure judgments. Law Enforcement Defendants' MTD at 6. According to Defendants, as "[t]he core of Plaintiffs' allegation[s] focuses on the foreclosure of Plaintiffs' home and the eviction action pending against them in the Superior Court of California, County of Mendocino," consideration of Plaintiffs' allegations must be barred under *Rooker-Feldman*. *Id.* The *Rooker-Feldman* doctrine, however, only bars a federal court from exercising jurisdiction over a claim effectively attacking a state court final judgment that was entered *before* Plaintiffs filed the federal court complaint. *See Exxon Mobil Corp. v. Saudi Basic Indus.,* 544 U.S. 280, 284 (2005) (confining application of the *Rooker/Feldman* doctrine to "cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection

Enforcement Defendants' personal jurisdiction arguments since they resolve this case as to these Defendants.

Defendants Nationstar and Citibank seek to dismiss Plaintiffs' Amended Complaint on the basis that Plaintiffs have failed to state a claim. Defendant Citibank also moves for dismissal on the basis that venue is improper in this Court. The Court will evaluate Plaintiffs' claims as they relate to Defendants Nationstar and Citibank under Federal Rule of Civil Procedure 12(b)(6), as the Court finds this case is most efficiently resolved by addressing the merits of Plaintiffs' claims against these Defendants.

---

of those judgments.") Here, the foreclosure proceeding at issue was a non-judicial foreclosure proceeding and did not involve a final state court judgment that would implicate *Rooker-Feldman*. The unlawful detainer proceeding which Plaintiffs also attack was filed by Nationstar on March 28, 2014, but judgment was not entered in that proceeding until August 8, 2014—over a month after Plaintiffs filed their federal complaint in this Court. *See* Notice of Related Case, ECF No. [22], Ex. B (Unlawful Detainer Judgment). Accordingly, the *Rooker-Feldman* doctrine does not present a jurisdictional bar in this case. *See Exxon Mobil Corp.*, 544 U.S. at 292 ("[N]either *Rooker* nor *Feldman* supports the notion that properly invoked concurrent jurisdiction vanishes if a state court reaches judgment on the same or related question while the case remains *sub judice* in a federal court.").

Even though *Rooker-Feldman* does not bar the Court's jurisdiction over Plaintiffs' claims, it is possible that the Court's review of certain of Plaintiffs' claims is precluded by *res judicata* now that a final judgment has been entered in the unlawful detainer proceeding. *Id.* at 293 ("[d]isposition of the federal action, once the state-court adjudication is complete, would be governed by preclusion law."). As the Court is dismissing the Law Firm and Law Enforcement Defendants because the Court lacks personal jurisdiction over them, the Court need only consider the preclusive effect of *res judicata* for Defendants Citibank and Nationstar. However, neither Citibank nor Nationstar raise *res judicata*—which is an affirmative defense—in their motions to dismiss. Accordingly, the Court will not address *res judicata* and will dispose of Plaintiffs' claims against these Defendants pursuant to Federal Rule of Civil Procedure 12(b)(6). Nevertheless, as Nationstar does invoke *res judicata* in its Opposition to Plaintiffs' Motion for Preliminary Injunction and Temporary Restraining Order, the Court will note that *res judicata* would likely require the dismissal of Plaintiffs' claims which should have been raised in the unlawful detainer proceeding either as a defense or counterclaim. In any event, the Court dismisses all of Plaintiffs' claims with regards to Nationstar and Citibank pursuant to 12(b)(6).

## II.      LEGAL STANDARD

### A.  Rule 12(b)(2)

When personal jurisdiction is challenged under Rule 12(b)(2), the plaintiff bears the burden of establishing a factual basis for asserting personal jurisdiction over a defendant. *See Crane v. N.Y. Zoological Soc'y*, 894 F.2d 454, 456 (D.C. Cir. 1990). To establish that personal jurisdiction exists, the plaintiff cannot rest on bare allegations or conclusory statements but "must allege specific acts connecting [each] defendant with the forum." *Second Amendment Found. v. U.S. Conference of Mayors*, 274 F.3d 521, 524 (D.C. Cir. 2001) (internal quotation omitted). "To make such a showing, the plaintiff is not required to adduce evidence that meets the standards of admissibility reserved for summary judgment and trial[;]" but rather, the plaintiff may "rest [his] arguments on the pleadings, 'bolstered by such affidavits and other written materials as [he] can otherwise obtain.' " *Urban Inst. v. FINCON Servs.*, 681 F.Supp.2d 41, 44 (D.D.C. 2010) (quoting *Mwani v. bin Laden*, 417 F.3d 1, 7 (D.C. Cir. 2005)). In the case of a *pro se* plaintiff, although the Court is required to construe the pro se complaint liberally, *see Howerton v. Ogletree*, 466 F.Supp.2d 182, 183 (D.D.C. 2006), "[p]ro se plaintiffs are not freed from the requirement to plead an adequate jurisdictional basis for their claims." *Gomez v. Aragon*, 705 F.Supp.2d 21, 23 (D.D.C. 2010) (citation omitted).

### B. Rule 12(b)(6)

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a complaint on the grounds it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The Federal Rules of Civil Procedure require that a complaint contain " 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.' " *Bell Atl.*

*Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957));

*accord Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (*per curiam*). "[A] complaint [does not]

suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.' " *Ashcroft v.

Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557). Rather, a complaint must

contain sufficient factual allegations that, if accepted as true, "state a claim to relief that is

plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

In evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court must

construe the complaint in the light most favorable to the plaintiff and must accept as true all

reasonable factual inferences drawn from well-pleaded factual allegations. *In re United Mine

Workers of Am. Employee Benefit Plans Litig.*, 854 F.Supp. 914, 915 (D.D.C.1994).  Further, in

deciding a Rule 12(b)(6) motion, a court may consider "the facts alleged in the complaint,

documents attached as exhibits or incorporated by reference in the complaint," or "documents

upon which the plaintiff's complaint necessarily relies even if the document is produced not by

the plaintiff in the complaint but by the defendant in a motion to dismiss." *Ward v. D.C. Dep't

of Youth Rehab. Servs.*, 768 F.Supp.2d 117, 119 (D.D.C. 2011) (citations omitted).

## III.    DISCUSSION

In Plaintiffs' Amended Complaint, Plaintiffs clarify that they are bringing two sets of

claims in this matter: (1) claims challenging the foreclosure and eviction proceedings against

Plaintiffs (Counts I and VI), and (2) four False Claims Act ("FCA") claims (Counts II-V).  *See*

Am. Compl. ¶¶ 1-2.  The Court will first address whether it has personal jurisdiction over the

Law Enforcement and Law Firm Defendants since these two defendants raised personal

jurisdiction as a defense.   The Court will next turn to Plaintiffs' FCA claims and then to

Plaintiffs' challenges to the underlying foreclosure and eviction proceedings and evaluate

whether Plaintiffs have stated any viable claim against the remaining Defendants, Citibank and

Nationstar.   Ultimately, the Court finds that Plaintiffs have failed to establish that this Court has

personal jurisdiction over the Law Enforcement and Law Firm Defendants and, accordingly,

those Defendants must be dismissed from this case.   The Court further finds that Plaintiffs' FCA

claims are fatally flawed on procedural grounds and that Plaintiffs have failed to state a claim

relating to the underlying foreclosure and eviction proceedings.   As no viable claims thus remain

against Defendants Citibank and Nationstar, this case must be dismissed in its entirety.

## A. Dismissal for Lack of Personal Jurisdiction over Law Enforcement and Law Firm Defendants

The Law Enforcement and Law Firm Defendants each move to dismiss Plaintiffs'

Amended Complaint for, *inter alia*, lack of personal jurisdiction.   The Court agrees that Plaintiffs

have failed to establish personal jurisdiction over these Defendants and, accordingly, Plaintiffs'

claims against these Defendants are dismissed pursuant to Federal Rule of Civil Procedure

12(b)(2).[7]

In this Circuit, courts determine whether personal jurisdiction may be exercised "by

reference to District of Columbia law."   *United States v. Ferrara*, 54 F.3d 825, 828 (D.C. Cir.

1995).   "A District of Columbia court may exercise personal jurisdiction over a person domiciled

---

[7] Because the Court concludes that these Defendants should be dismissed for lack of personal jurisdiction, it does not address their remaining grounds for dismissal.   However, the Court does note that the two FCA claims against the Law Firm Defendants (Counts IV and V) would be dismissed for failure to state a claim and the remaining claims challenging the foreclosure and eviction proceedings that Plaintiffs appear to lodge against all Defendants would also be dismissed for failure to state a claim.   Accordingly, the Law Enforcement and Law Firm Defendants would also be dismissed for Plaintiffs' failure to state a claim against them upon which relief could be granted.

in, organized under the laws of, or maintaining his or its principal place of business in, the District of Columbia as to any claim for relief." D.C. Code § 13-422. Exercise of this so-called "general jurisdiction" requires that the defendant's contacts within the forum be "continuous and systematic" in order for the defendant to be forced to defend a suit arising out of any subject matter unrelated to the defendant's activities within the forum. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415-16 (1984). Alternatively, this Court may exercise "specific jurisdiction" to entertain controversies based on acts of a defendant that "touch and concern the forum." *Kopff v. Battaglia*, 425 F.Supp.2d 76, 81 (D.D.C. 2006) (citing *Steinberg v. Int'l Criminal Police Org.*, 672 F.2d 927, 928 (D.C. Cir. 1981)).

To determine whether it may exercise specific jurisdiction over a particular defendant, a court must engage in a two-part inquiry. First, the Court must determine that the District of Columbia's long arm statute, D.C. Code § 13-423, authorizes jurisdiction.[8] *See GTE New Media Servs., Inc. v. Bell-South Corp.*, 199 F.3d 1343, 1347 (D.C. Cir. 2000). *See also Edmond v. United States Postal Serv. Gen. Counsel*, 949 F.2d 415, 424 (D.C. Cir. 1991) (even when subject matter jurisdiction is predicated on federal question, plaintiffs must rely on the D.C. long-arm statute to assert personal jurisdiction over out-of-district defendants). Second, the court must

---

[8] The D.C. long-arm statute provides that a District of Columbia court may exercise personal jurisdiction over a person as to a claim for relief arising from the person's: (1) transacting any business in the District of Columbia; (2) contracting to supply services in the District of Columbia; (3) causing tortious injury in the District of Columbia by an act or omission in the District of Columbia; (4) causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia; (5) having an interest in, using, or possessing real property in the District of Columbia; (6) contracting to insure or act as surety for or on any person, property, or risk, contract, obligation, or agreement located, executed, or to be performed within the District of Columbia at the time of the contracting, unless the parties otherwise provide in writing; or (7) marital or parent and child relationship in the District of Columbia (subject to certain enumerated conditions). D.C. Code § 13-423.

find that exercise of jurisdiction comports with the requirements of constitutional due process. *See GTE New Media Servs.*, 199 F.3d at 1347. This determination turns on whether a defendant's "minimum contacts" with the District of Columbia establish that "the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal citation and quotation marks omitted).

Such minimum contacts must arise from some act by which the defendant "purposefully avails" himself of the privilege of conducting activities within the District of Columbia, thus invoking the "benefits and protections of its laws." *Asahi Metal Indus. Co. v. Super. Ct. of Cal., Solano Cty.*, 480 U.S. 102, 109 (1987). Put differently, the court "must insure that the defendant's conduct and connection with the forum 'are such that he should reasonably anticipate being hauled into court there.'" *Marshall v. Labor & Indus., State of Washington*, 89 F.Supp.2d 4, 9 (D.D.C. 2000) (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, (1980)).

Here, Plaintiffs' Amended Complaint fails entirely to demonstrate that this Court has personal jurisdiction over the Law Enforcement and Law Firm Defendants. The Complaint alleges no facts suggesting that these Defendants transacted business, contracted to supply services, or caused tortious injury in the District of Columbia. Indeed, the only mention of personal jurisdiction, which is found in Plaintiffs' Opposition, is the following:

> The long Arm Statute in Washington, DC provides for the personal jurisdiction of the Defendant when they have entered into a contract for services, or have conducted business in Washington, DC. The opposing counsel has failed to connect the dots with respect to the fact that NATIONSTAR MORTGAGE, LLC has engaged in a business with CITIBANK, NA to participate in a business transaction that is prohibited under the Consent Judgment. . . . By any test of legal theory about what constitutes a contract, this is a contract under the laws governing Washington, D.C.

Pl.s' Law Enforcement Opp'n. at 6, ¶ 10; Pl.s' Law Firm Opp'n at 6, ¶ 10.  It appears Plaintiffs are arguing that the Court has personal jurisdiction over all Defendants in this case because Defendant Citibank was party to an unrelated consent judgment issued in the District Court of the District of Columbia and the business transaction at issue in the present case allegedly violated that consent judgment.  As discussed, *infra*, Plaintiffs have failed to state a claim against Defendants for violation of the Consent Judgment in *United States v. Bank of America Corp., et al.*, No. 12-0361 (D.D.C. Apr. 4, 2012), the alleged "contract" entered into by Citibank. Nevertheless, even ignoring this fact for the moment, Plaintiffs have alleged no facts linking the Law Enforcement or the Law Firm Defendants to this "contract" or to activities within the District of Columbia.  The alleged actionable conduct on the part of the Law Firm Defendants arises out of their legal representation of Nationstar in the unlawful detainer action filed against the Plaintiffs in the Superior Court of Mendocino County, California, relating to property in California.  Law Firm Defendants' MTD, Ex. 1 (Fernandez Decl.), ¶ 1.  The acts for which the Sheriff of Mendocino County is sought to be held liable in and/or enjoined in this action are all actions that the Sheriff would take in the normal course and scope of his official duties within the County of Mendocino, State of California, not in the District of Columbia.  Law Enforcement Defendants' MTD, Ex A. (Allman Decl.), ¶ 9.

Moreover, these Defendants do not reside within the District of Columbia, and their principal places of business are outside of the District.  TFLG A Law Corporation ("TFLG") is a California law firm, of which Defendant Fernandez is a partner, with its only office in that state. Law Firm Defendants' MTD, Ex. 1 (Fernandez Decl.), ¶¶ 1, 7.  TFLG is not engaged in the practice of law in the District of Columbia, and none of its lawyers are admitted to practice before the courts of the District of Columbia.  *Id.* ¶ 7.  Similarly, Defendant Mendocino County

Sheriff's Department does not do business, advertise, or contract with persons in the District of Columbia and has no subsidiaries, offices, or employees in the District of Columbia.  Law Enforcement Defendants' MTD, Ex. A (Allman Decl.) ¶¶ 7-8, 7*.[9]  Defendant Mendocino County Sheriff Thomas Allman whom Plaintiffs are suing in his personal and official capacity has never resided in, been domiciled in, been employed in, or done business in the District of Columbia.  *Id.* ¶ 5.  Accordingly, because Plaintiffs have failed to demonstrate that the Law Firm and Law Enforcement Defendants possess any "contacts" whatsoever with the District of Columbia—and certainly no contacts sufficient to satisfy the requirements of either general or specific jurisdiction set forth above—this Court finds itself without personal jurisdiction over Plaintiffs' claims against them.

### B.  Dismissal Pursuant to Rule 12(b)(6): Failure to State a Claim

Based on the preceding discussion, the only remaining Defendants in this suit are Citibank and Nationstar.  Accordingly, the Court discusses Plaintiffs' claims as they relate to Citibank and Nationstar.

#### a.  False Claims Act Counts

Plaintiffs make four FCA claims against Defendants Citibank and Nationstar pursuant to 31 U.S.C. § 3729(a)(1)(A), (B), (D), and (G).  *See* Am. Compl. ¶¶ 97-128.  The Court need not delve into the details of these claims because Plaintiffs have failed to comply with the procedures for filing a claim under the FCA and, thus, Plaintiffs' FCA claims must be dismissed with prejudice.  *See Taitz v. Obama*, 707 F. Supp. 2d 1, 4 (D.D.C. 2010) ("Failure to comply with these filing procedures results in dismissal of the relator's suit with prejudice.").  To bring a claim under the False Claims Act, it must be filed under seal on behalf of the United States and

---

[9] Sherriff Allman's declaration is incorrectly numbered and includes two paragraphs "6" and "7" on the second page.  The Court has identified the second paragraph "7" as "7*".

not served on the defendant until ordered by the court.  31 U.S.C. § 3730(b)(2).  Here, Plaintiffs did not file their Complaint or Amended Complaint under seal and appear to have served the initial Complaint and Amended Complaint directly on Defendants.  Accordingly, on this basis alone Plaintiffs' FCA claims must be dismissed with prejudice.  *See Nattah v. Bush*, 541 F. Supp. 2d 223, 239 (D.D.C. 2008), *aff'd in part, rev'd in part on other grounds*, 605 F.3d 1052 (D.C. Cir. 2010); *United States ex rel. Foster v. Savannah Communication*, 140 Fed. Appx. 905, 908, 2005 WL 1719221 (11th Cir. July 25, 2005) (affirming dismissal of qui tam action for failure to file the complaint under seal or comply with any of the other procedural filing requirements).

Even more importantly, Plaintiffs are proceeding *pro se* and thus cannot bring a *qui tam* action *ex relatione* as they allege they are seeking to do.  *See* Am. Compl. ¶ 3 (alleging that "Plaintiffs are private attorneys general, pursuant to the sections of Title 18 authorizing the Plaintiffs to act . . . [and] the Plaintiffs are about to suffer irreparable harm and thus the Plaintiffs are authorized to appear Ex Relatione . . ."); ¶ 5 ("the Plaintiff's [sic] are appearing Ex Rel . . ."); ¶ 53 ("Pursuant to the Federal Civil False Claims Act, 31 U.S.C. § 3729 *et seq.* (the "FCA"), Relators seek to recover, on behalf of the United States of America, damages and civil penalties arising from the sale by Defendants of MBS, and other forms of asset-backed securities, using funds provided by the United States ("U.S.") government.").  It is well-established law that "a relator in a *qui tam* action may not proceed *pro se*."  *Anaviev v. Freitas, et al.*, --- F. Supp. 2d ---, No. 13-00341, 2014 WL 1400857, at *6 (D.D.C. Apr. 11, 2014); *U.S. ex rel. Fisher v. Network Software Assocs.*, 377 F. Supp. 2d 195, 196 (D.D.C. 2005); *Rockefeller v. Westinghouse Elec. Co.*, 274 F. Supp. 2d 10, 16 (D.D.C.) (holding that "[t]he need for adequate legal representation on behalf of the United States is obviously essential.").  For each of the foregoing reasons,

Counts II through V fail to state a claim upon which relief could be granted and, accordingly, must be dismissed.

### b. Claims Challenging Foreclosure and Eviction Proceedings

Plaintiffs formally assert two counts challenging the foreclosure and eviction proceedings against Plaintiffs. In addition, the Court discerns several claims within these counts and throughout Plaintiffs' Amended Complaint that the Court will address in turn.

### i. Standing to Foreclose on Plaintiffs' Mortgage

Plaintiffs' Amended Complaint, citing to various California statutes and provisions of the Uniform Commercial Code,[10] alleges that Defendants lack standing to foreclose on their home because "defendants have not established, with admissible evidence, that any of them are the holder of the note or holder of the Deed of Trust . . . ." Am. Compl. ¶ 93. Specifically, Plaintiffs allege that, for several reasons, Defendants were not properly assigned the note or the Deed of Trust and thus cannot establish that they have standing to foreclose on Plaintiffs' home. Plaintiffs also allege that Defendants do not have standing to foreclose on Plaintiffs' home because Plaintiffs' loan was securitized and because Defendants have not provided documented proof to demonstrate they possess the original note or otherwise documented their interest in the note. Accordingly, Plaintiffs contend that because Defendants are strangers to their loan, their efforts to foreclose are improper. *Id.* ¶ 8.

---

[10] Plaintiffs repeatedly invoke various provisions of the Uniform Commercial Code ("UCC") arguing that Defendants have violated its requirements. *See, e.g.,* Am. Compl. ¶¶ 8, 11, 13, 42, 43, 51, 52, 60, 69, 94. However, these provisions are inapposite here. As California courts have held, the UCC does not apply to California's non-judicial foreclosure proceedings. *See Rieger v. Wells Fargo Bank, N.A.*, No. 3:13-0749, 2013 WL 1748045, at *7 (N.D. Cal. Apr. 23, 2013) ("California Civil Code section 2924, not the UCC, governs nonjudicial foreclosures.").

California courts have repeatedly and consistently rejected claims akin to Plaintiffs' claims. Specifically, California courts consistently reject the argument that securitization precludes a foreclosure action. *See, e.g., Preciado v. Wells Fargo Home Mortg.*, No. 13-00382 LB, 2013 WL 1899929, at *5 (N.D. Cal. May 7, 2013) ("the weight of persuasive authority in this district is that a plaintiff has 'no standing to challenge foreclosure based on a loan's having been securitized.'") (quoting *Niranjan v. Bank of America, N.A.*, No. C 12-05706, 2013 WL 1701602, at *2 (N.D. Cal. April 18, 2013)); *McGough v. Wells Fargo Bank, N.A.*, No. C12-0050, 2012 WL 2277931, at *4 (N.D. Cal. June 18, 2012) ("Theories that securitization undermines the lender's right to foreclose on a property have been rejected by the courts."); *Wadhwa v. Aurora Loan Servs., LLC*, No. S-11-1784, 2011 WL 2681483, at *4 (E.D. Cal. July 8, 2011) (noting that "this position has been rejected by numerous courts"); *Flores v. GMAC Mortg., LLC*, No. C 12-794, 2013 WL 2049388, at *2 (N.D. Cal. May 14, 2013) ("[plaintiff contends that] because MIT securitized the note, this allegedly stripped MERS of any ability to assign the deed of trust. Courts have consistently rejected this theory."); *Lane v. Vitek Real Estate Indus. Group*, 713 F.Supp.2d 1092, 1099 (E.D. Cal. 2010) ("The argument that parties lose their interest in a loan when it is assigned to a trust pool has also been rejected by many district courts.").

California courts have also rejected Plaintiffs' argument that Defendants must demonstrate their legal possession of the note (as well as physical possession of the original copy of the note) in order to foreclose. "California appellate courts have consistently rejected the theory that California's nonjudicial foreclosure scheme (Cal. Civ. Code §§ 2924-2924k) requires a foreclosing party to have a beneficial interest in or physical possession of the note." *McNeil v. Wells Fargo Bank, N.A.*, No. 13-5519 SC, 2014 WL 2967629, at *3 (N.D. Cal. July 1, 2014). *See also Jenkins v. JP Morgan Chase Bank*, 156 Cal. Rptr. 3d 912, 925 (Cal. Ct. App. 2013)

("the foreclosing beneficiary-creditor need not produce the promissory note or otherwise prove it holds the note to nonjudicially foreclose on a real property security."); *Garcia v. Federal Home Loan Mortgage Corp.*, No. 1:12-cv-00397, 2012 WL 3756307, at *4 (E.D. Cal. 2012) ("the California nonjudicial foreclosure process does not require physical possession of the note by the party initiating foreclosure."); *Jahaveri v. JP Morgan Chase Bank, N.A.*, No. CV10-08185, 2011 WL 1131518, at *2 (C.D. Cal. Mar. 24, 2011) ("Nothing in [California Civil Code § 2924] requires the entity initiating foreclosure to have physical possession of the note.  Indeed, courts have uniformly found that 'physical possession of the original promissory note is not a pre-requisite to initiating foreclosure proceedings.'") (quoting *Nguyen v. Lasalle Bank Nat'l Ass'n*, No. SACV 09-0881, 2009 WL 3297269, at *3 (C.D. Cal. Oct. 13, 2009)); *Heald v. Nat'l City Mortg.*, No. 11CV904, 2011 WL 5513226, at *5 (S.D. Cal. Nov. 10, 2011) ("to the extent that Plaintiff's wrongful foreclosure claim is based on the fact that Defendants do not possess the 'genuine original' promissory note, allonge, or deed of trust it necessarily fails as well. California does not require possession of the original note before initiating a foreclosure.") (internal citation omitted).

As for Plaintiffs' argument that the note and Deed of Trust were not properly assigned and thus Defendants cannot foreclose on Plaintiffs because they cannot show they have an ownership interest in the note or Deed of Trust, this claim must fail because Plaintiffs have not alleged prejudice.[11] Under California law, in order to maintain a wrongful foreclosure claim, "Plaintiffs must allege that (1) Defendants caused an illegal, fraudulent, or willfully oppressive sale of the property pursuant to a power of sale in a mortgage or deed of trust; (2) Plaintiffs suffered prejudice or harm; and (3) Plaintiffs tendered the amount of the secured indebtedness or

---

[11] Indeed, all of Plaintiffs' challenges to the foreclosure and eviction proceedings must fail because Plaintiffs have not alleged prejudice.

were excused from tendering." *Nugent v. Fed. Home Loan Mortgage Corp.*, No. 2:12-cv-00091, 2013 WL 1326425, at *7 (E.D. Cal. Mar. 29, 2013). "California courts have determined [that] plaintiffs are unable to show prejudice when the borrowers were in default and the allegedly improper assignment does not affect the borrower's ability to pay . . . ." *Lazo v. Summit Management Co.*, No. 1:13-cv-02015, 2014 WL 3362289, at *10 (E.D. Cal. July 9, 2014).  *See also Fontenot v. Wells Fargo Bank, N.A.*, 129 Cal. Rptr. 3d 467, 481 (Cal. Ct. App. 2011) (finding no prejudice where borrower was in default and did not allege that transfer of note interfered with borrower's ability to pay); *Siliga v. Mortg. Elec. Registration Sys., Inc.*, 161 Cal. Rptr. 3d 500, 508 (Cal. Ct. App. 2013) ("The assignment of the deed of trust and the note did not change [plaintiffs'] obligations under the note, and there is no reason to believe that . . . the original lender would have refrained from foreclosure in these circumstances"). On this point, then-Chief Judge Anthony Ishii of the United States District Court for the Eastern District of California noted:

> Regardless of alleged irregularities, Plaintiff remained obligated under the deed of trust to faithfully make the required payments. Plaintiff does not contend that he was not actually in default under the deed of trust. Plaintiff's property would therefore be subject to foreclosure even under an unimpeachable creditor, and any alleged irregularities in the proceedings caused by Defendants have not made Plaintiff worse off than he would have been in the absence of any problem.

*Garcia*, 2012 WL 3756307, at *5.  Here, there is no dispute that Plaintiffs' original loan was valid and that Plaintiffs are in default on their loan.  Rather, Plaintiffs devote their Amended Complaint to alleging and arguing that Citibank and Nationstar are improper parties to foreclose on him because the individual who authorized the assignment of the loan to Nationstar did not have authority to execute such an assignment; Defendants did not provide the proper notification regarding the assignment of the note; and interim assignments of the note were not recorded. Yet, even if such irregularities occurred, Plaintiffs allege no prejudice from foreclosure based on

the three alleged regularities relating to the assignment of the note, and therefore their wrongful foreclosure claim has no merit. *See Siliga*, 161 Cal. Rptr. 3d at 508 ("Absent any prejudice, the [Plaintiffs] have no standing to complain about any alleged lack of authority or defective assignment.").

Plaintiffs also allege irregularities in the Notice of Default, foreclosure sale, and the recording of the Trustee Deed. As with the alleged irregularities in the assignment of the note and/or Deed of Trust, irregularities in the foreclosure process do not change the fact that Plaintiffs were in default under the loan and subject to foreclosure. *See Lazo*, 2014 WL 3362289, at *10 ("'mere irregularities' in the foreclosure process are insufficient to show prejudice." (citing *Fontenot v. Wells Fargo Bank.,* 129 Cal.Rptr.3d 467, 481 (Cal. Ct. App. 2011)). Consequently, "any irregularities in the proceedings caused by Defendants have not made Plaintiff[s] worse off than [they] would have been in the absence of any problem." *Garcia*, 2012 WL 3756307, at *5. Accordingly, the Court rejects Plaintiffs' claims that Defendants lack standing to foreclose on their property.

### ii.    Fraud

Plaintiffs' fraud claim is similarly subject to dismissal. Plaintiffs appear to allege that Defendants committed fraud when MERS assigned Plaintiffs' mortgage from Lehman Brothers to Nationstar because the individual signing off on the assignment on behalf of MERS was not authorized to make the assignment. *See* Am. Compl. ¶ 13. First, to the extent that Plaintiffs claim should be read as alleging that MERS procured a fraudulent assignment of Plaintiffs' mortgage, this claim must fail because MERS is not a Defendant in this case. Even if Plaintiffs' fraud claim can be read as alleging fraud by one of the two remaining Defendants—Citibank and Nationstar—the Court concludes that Plaintiffs' fraud claim must nevertheless be dismissed

because Plaintiffs have failed to allege or set out any actions taken by Plaintiffs in reliance on the allegedly false statements made by Defendants.

In analyzing Plaintiffs' fraud claim, the Court applies California law.[12]  Under California law, a plaintiff must allege the following to support a claim of fraud: "a false representation, knowledge of its falsity, intent to defraud, justifiable reliance, and damages." *Moore v. Brewster*, 96 F.3d 1240, 1245 (9th Cir. 1996).   Although Plaintiffs' allegations about the MERS assignment go to the "false representation" prong of this analysis, Plaintiffs' claim nevertheless fails because they have not alleged any actions taken by them in reliance on the allegedly false statement by Defendants that MERS properly assigned Plaintiffs' mortgage to Nationstar. Rather, from the outset of this litigation, and apparently from the initiation of the foreclosure proceedings against them by Nationstar, Plaintiffs have vigorously contested Defendants' representations, arguing that Plaintiffs' mortgage was fraudulently assigned to Nationstar and that, as a result, Defendants do not have an ownership interest in their mortgage and lack the power to foreclose on Plaintiffs' home. "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Here, Plaintiffs state with particularity the alleged fraudulent statements by Defendants, but their Amended Complaint and briefing fail to specifically identify any actions they as Plaintiffs have

---

[12] "In a diversity action, a federal district court applies the choice of law principles of the state or jurisdiction in which it sits." *Lopez v. Council on American-Islamic Relations Action Network, Inc.*, 741 F.Supp.2d 222, 234 (D.D.C. 2010). "The District of Columbia employs a 'modified governmental interest analysis,' under which the court evaluates the governmental policies underlying the applicable laws and determines which jurisdiction's policy would be most advanced by having its laws applied to the facts in the case." *Id.* at 234-35 (citation omitted). "For a tort claim, the state whose policy would be advanced the most is the state with the most significant relationship to the case." *Id.* at 235. "The Court considers the place where the injury occurred, the place where the conduct causing the injury occurred, the residence, domicile, place of incorporation or place of business of the parties, and the place where the parties' relationship, if any, is centered." *Id.* Here, all of these factors support application of California law, and the parties do not argue that any other law should apply.

taken in reliance on these statements and the resulting damage from this reliance. Accordingly, the Court concludes that Plaintiffs have not met their burden of establishing a claim of fraud.

### iii.   Enforcement of Consent Judgment

Plaintiffs next assert that Defendants Citibank and Nationstar are in violation of the Consent Judgment entered into by Citibank and several other banks in *United States v. Bank of America Corp., et al.*, No. 12-0361 (D.D.C. Apr. 4, 2012), ECF No. 14 (Consent Judgment). Citibank and Nationstar have moved to dismiss this claim, arguing that because Plaintiffs were not a party to this Consent Judgment, they are unable to enforce any obligation imposed upon the parties to the judgment. The Court agrees, as by its terms, this Consent Judgment is not enforceable by individual third-party beneficiaries.  The Consent Judgment specifically states that enforcement actions may be brought by a "Party to this Consent Judgment or the Monitoring Committee." *Id.*  Plaintiffs, as individual mortgagees, are neither party to the Consent Judgment nor members of the monitoring committee. Other courts in this district considering identical claims from other individual homeowner plaintiffs have reached the same conclusion. *See, e.g., Conant v. Wells Fargo Bank, N.A., et al.,* --- F. Supp. 2d ---, 2014 WL 575758, at *9 (D.D.C. Feb. 14, 2014) ("by its terms, this Consent Judgment is not enforceable by individual third-party beneficiaries"); *McCain v. Bank of America*, No. 13-cv-1418, 2014 WL 334196, at *7 (D.D.C. Jan. 30, 2014) ("The plaintiff was not a party to this consent judgment, and therefore, is unable to enforce any obligation imposed upon the parties to the judgment."); *Glaviano v. J.P. Morgan Chase Bank, N.A.*, No. 13-cv-2049, 2013 WL 6823122, at *1 n. 1 (D.D.C. Dec. 27, 2013) ("Plaintiffs also erroneously claim that the foreclosure sale of their property is prohibited by the Consent Orders issued in *United States v. Bank of America* . . . . Plaintiffs were not parties in *United States v. Bank of America*, which dealt with mortgage servicing, origination, and

certification in general and did not involve Plaintiffs' mortgage or any other particular mortgage."); *Ghaffari v. Wells Fargo Bank, N.A.*, No. 13-115, 2013 WL 6070364, at *4 (D.D.C. Nov. 19, 2013) ("claims by individual borrowers, such as Plaintiff, are excluded from the Consent Judgment"); s*ee also SEC v. Prudential Sec. Inc.*, 136 F.3d 153, 158 (D.C. Cir. 1998) ("this circuit has opted for a bright line rule . . . that third parties to government consent decrees cannot enforce those decrees absent an explicit stipulation by the government to that effect.") (internal citation omitted).  Accordingly, all of Plaintiffs' claims against Citibank and Nationstar relating to violation of the Consent Judgment in *United States v. Bank of America Corp., et al.*, No. 12-0361 (D.D.C. Apr. 4, 2012) are dismissed.

### iv.       Intentional Infliction of Emotional Distress

Plaintiffs' claim for intentional infliction of emotional distress ("IIED") similarly fails. Plaintiffs allege that "Defendants intentionally inflicted emotional distress knowing that they and their client and co-conspirator does not have standing to foreclose on said property and knowing the loss of a persons [sic] home is one of the most traumatic things that anyone can experience." Am. Compl. ¶ 90.  Plaintiffs make no other allegation in support of their IIED claim.  As with Plaintiffs' fraud claim, the Court applies California law.  *See Lopez*, 741 F.Supp.2d at 235 ("The Court considers the place where the injury occurred, the place where the conduct causing the injury occurred, the residence, domicile, place of incorporation or place of business of the parties, and the place where the parties' relationship, if any, is centered.").  "The elements of the tort of intentional infliction of emotional distress are: '(1) outrageous conduct by the defendant; (2) the defendant's intention of causing or reckless disregard of the probability of causing emotional distress; (3) the plaintiff's suffering severe or extreme emotional distress; and (4) actual and proximate causation of the emotional distress by the defendant's outrageous

conduct.'" *Odinma v. Aurora Loan Svcs.*, No. C-09-4674, 2010 WL 1199886, at *9 (N.D. Cal. Mar. 23, 2010) (quoting *Trerice v. Blue Cross of Cal.*, 257 Cal. Rptr. 338, 340 (Cal. Ct. App. 1989)). "Outrageous conduct must 'be so extreme as to exceed all bounds of that usually tolerated in a civilized society.'" *Id.* (quoting *Trerice*, 257 Cal. Rptr. at 340).

California courts have uniformly rejected IIED claims related to foreclosure actions, including allegedly wrongful foreclosure. *See, e.g.*, *Baidoobonso-Iam v. Bank of America*, No. CV 10-9171, 2011 WL 5870065, at *5 (C.D. Cal. Nov. 22, 2011) ("to the extent that Collier's claim is solely predicated on the foreclosure of his property, California courts have held that such conduct does not state a claim for intentional infliction of emotional distress."); *Smith v. Wachovia*, No. C 09-01300, 2009 WL 1948829, at *4 (N.D. Cal. July 6, 2009) (allegations that defendant "wrongfully and intentionally initiated non-judicial foreclosure proceedings" were "not so extreme as to exceed the bounds of civilized society"); *Davenport v. Litton Loan Servicing, LP*, 725 F.Supp.2d 862, 884 (N.D. Cal. 2010) (holding that the act of foreclosing on a home "falls shy of 'outrageous,' however wrenching the effects on the borrower."). Plaintiffs provide no response to Defendants' arguments on this point and therefore their IIED claim is dismissed.

### v.  Due Process Violation

Finally, under the heading "Additional Relief Requested," Plaintiffs allege that the foreclosure sale violated their due process rights under the Fifth and Fourteenth Amendments to the U.S. Constitution.  Am. Compl. ¶ 144.  Plaintiffs fail to state a claim for relief under the Due Process clause because "[i]n order to trigger the Due Process Clause of the Fourteenth Amendment, or a comparable federal action to invoke the Fifth Amendment, there must be a 'state action.' " *Simms v. District of Columbia*, 699 F.Supp.2d 217, 224 (D.D.C. 2010).  The Due

Process Clause "offers no shield" against "private conduct, however discriminatory or wrongful." *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 349 (1974) (internal quotation marks omitted). Here, Defendants Citibank and Nationstar are not government actors and their efforts to foreclose on Plaintiffs' property, even if accomplished through interactions with the Mendocino County Sheriff's Department, do not constitute state action. *See United States v. Property Identified as Lot Numbered 718*, 983 F.Supp. 9, 11 (D.D.C. 1997) ("While [plaintiff] may face eviction if her lender forecloses on the residence, that 'seizure' by a strictly private actor does not trigger the due process clause."). In light of the lack of state action here, Plaintiffs' claim that Defendants violated their due process rights is dismissed.

### c.  DOE Defendants

Plaintiffs name five Doe Defendants in their Amended Complaint and explain in the Amended Complaint that "[t]he identity of the DOE defendants are not known to the Plaintiff at this time but the Plaintiff will add their names in an amended complaint as needed, and as their names become known to the Plaintiff." Am. Compl. ¶ 58. Plaintiffs do not give any explanation about the role the Doe Defendants played in the facts underlying this case. Nor have Plaintiffs sought to amend their complaint to name the Doe Defendants. When Plaintiffs amended their Complaint on October 14, 2014, they did not add the names of the Doe Defendants. More importantly, they did not provide any explanation of the roles and relevance of the Doe Defendants at that time. The time for serving defendants has now passed. Even if Plaintiffs cannot know the names of the Doe Defendants without discovery, they should at least be able to indicate in their Complaint what roles these defendants played in the foreclosure and eviction proceedings. As Plaintiffs have not indicated that the Doe Defendants played roles in the foreclosure and eviction proceedings that are any different from the roles played by the named

Defendants Plaintiffs have sued, the Court's analysis of the legal infirmities of Plaintiffs' claims in Part B applies with equal force to the Doe Defendants whom, accordingly, must also be dismissed.

## IV.    CONCLUSION

For the foregoing reasons, the Court GRANTS Plaintiffs' Motion to Amend the Complaint and GRANTS the motions to dismiss of Defendants Citibank, Nationstar, the Law Enforcement Defendants, and the Law Firm Defendants.  Specifically, the Law Enforcement and Law Firm Defendants are DISMISSED WITHOUT PREJUDICE for lack of personal jurisdiction.  Defendants Citibank and Nationstar and the Doe Defendants are DISMISSED WITH PREJUDICE as Plaintiffs have failed to state a claim against these Defendants under the False Claims Act or a claim for wrongful foreclosure, fraud, violation of the consent judgment, intentional infliction of emotional distress, or violation of due process.  In light of this decision on Defendants' Motions to Dismiss, Plaintiffs' Motion for Preliminary Injunction and Temporary Restraining Order is DENIED AS MOOT.  An appropriate Order accompanies this Memorandum Opinion.

_____/s/_____
COLLEEN KOLLAR-KOTELLY
United States District Judge